210 A.2d 138.

THOMSON METHODIST CHURCH *et al. vs.* ZONING BOARD OF REVIEW OF THE CITY OF PAWTUCKET.

MAY 21, 1965.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

676

JOSLIN, J. This is a petition for a writ of certiorari to review a decision of the respondent board denying by a 4-1 vote an application for permission to locate and construct a gasoline filling station on land located in a residence B district in the city of Pawtucket. The applicants for the permit were Thomson Methodist Church and Sun Oil Company which are respectively the owner and holder of an option to purchase the land in question and for convenience will hereinafter together be referred to as if they were the owners. The permission was requested under sec. 26.6 A (4) of the zoning ordinance which authorizes the location of a gasoline station in a residence B district as a permitted use if first approved by the board, and alternatively as an exception or a variance. The writ issued and pursuant thereto the pertinent records have been certified to this court.

The threshold question, and the only one briefed by the board, goes to its jurisdiction to pass upon the application. It arises because in the interval between the date of the filing of the application and the board's decision, the zoning ordinance was amended by the deletion of sec. 26.6 A(4). The effect of that amendment, we held only recently in *Najarian Realty Corp.* v. *Zoning Board of Review*, 99 R. I. 465, 208 A.2d 528, was to deprive the board of authority to grant relief under that section. If this application had been directed solely to the relief permitted under sec. 26.6 A(4), our decision in *Najarian* would control. Here, however, petitioners applied not only for sec. 26.6 A(4) relief, but also for an exception or variance, and the board's jurisdiction as to the latter two grounds continued notwithstanding the amendment. Accordingly, we turn to the record.

It appears that petitioners' land is situated at the northwesterly corner of Mineral Spring avenue and Conant street and located thereon are a church, a parsonage, and a wood frame, two-and-a-half-story dwelling house. Mineral

Spring avenue is a heavily traveled main highway, the traffic on which has increased substantially in recent years. Directly across Conant street from petitioners' property is a large cemetery, and not too far distant is the main line of the New York, N.H. & H. R. R. which runs in a generally northeasterly direction and passes under bridges at both Conant street and Mineral Spring avenue.

The neighborhood includes residential buildings which are predominantly multi-family and many of which are sixty to seventy years old, as well as land devoted to commercial and industrial uses. The nonresidential uses are found not only in those portions of the surrounding area zoned commercial and industrial, but also in the comparatively small area zoned residence B where petitioners' land is located.

Testimony for petitioners came from two real estate experts, a traffic engineer, and a representative of the option holder. In substance, and insofar as here essential, they testified that the proposed use would, because of the increased vehicular travel on Mineral Spring avenue and the decreasing number of neighboring gasoline stations, serve the public convenience and welfare without at the same time either depreciating the value of surrounding property or tending to create a fire or a traffic hazard. According to one real estate expert any possible adverse effect of the proposed use on the value of neighboring property would be more than absorbed by the increment in land value resulting from the growing commercial character of the area.

For the remonstrants, of whom there were several, the material evidence was that the requested use if granted would create additional traffic at the intersection of Mineral Spring avenue and Conant street and would depreciate the value of surrounding property.

On this record the board denied the application finding in substance that the proposed use would depreciate the

value of surrounding property, create a traffic hazard, and would be neither reasonably necessary for the convenience or welfare of the public nor possessive of a reasonable tendency towards promoting the public convenience, welfare or health. The nature of these findings relates to those associated with a decision on an application for an exception rather than for a variance. Since, in our judgment, the board abused its discretion in not granting an exception, we will consider only that part of the case.

In passing on an application for an exception the authority of a zoning board to act is circumscribed by such reasonably definite rules and standards as have been established by the local legislature. *Klowan* v. *Zoning Board of Review*, 99 R. I. 252, 207 A.2d 42; *Hazen* v. *Zoning Board of Review*, 90 R. I. 108. These limitations may vary in the different municipalities provided they fall within the framework of the general purposes for which zoning ordinances may lawfully be enacted. Once delineated, they provide the guideposts within which the board must exercise its discretion and become conditions precedent which are to be established prior to affirmative action. *Klowan* v. *Zoning Board of Review, supra; Fitzgerald* v. *Zoning Board of Review*, 99 R. I. 221, 206 A.2d 635.

In the city of Pawtucket the controlling standards are found in sec. 26.18 (8) (a) and (b) where it is provided that the board may, subject to appropriate conditions and safeguards:

"(8) Approve in any district an application for any use or building which the board of review finds:

"(a) To be in harmony with the character of the neighborhood, appropriate to the use or buildings permitted in such district, and possessive of a reasonable tendency towards promoting the public convenience, the public welfare or the public health;

"(b) Where such use or building is reasonably necessary for the convenience or welfare of the public * * *"

680

Even a cursory examination of sec. 26.18 (8) (a) and (b) raises the issue of the relevancy thereunder of the effect a use applied for as an exception may have on the value of neighboring property. The zoning ordinances of many of our cities and towns, those of the cities of Providence and Newport being illustrative, provide that an exception may not be granted if to do so would tend to depreciate the value of or substantially injure neighboring property. It is obvious, however, that no specific standard of that type can be found in sec. 26.18 (8) (a) and (b). Whether any such provision is mandated by so much of G. L. 1956, §45-24-3, as directs that each municipality enacting a zoning ordinance shall adopt regulations "with a view to conserving the value of buildings" or whether such a regulation may by implication be read into that language of sec. 26.18 (8) (a) which provides that the proposed use shall "be in harmony with the character of the neighborhood" would in different circumstances require answers. Because of the posture in which this case comes to us, however, we assume, although we expressly refrain from passing thereon, that under this ordinance the question of the effect of a proposed use on the value of neighboring property has relevance.

On that assumption and in order to determine whether the board abused its discretion in denying the request for an exception, we direct our inquiry to whether there is any evidence in the record of probative force which negates any of the conditions precedent set forth in sec. 26.18 (8) (a) and (b). If there is any such evidence, and under our rule we will not ordinarily weigh it, the board's decision must stand. In the absence thereof, our conclusion will be otherwise, provided, however, that the applicants have by competent evidence satisfied all of the prescribed standards and established the existence of all of the conditions precedent. *Dawson* v. *Zoning Board of Review*, 97 R. I. 299, 197 A.2d

284; *Caldarone* v. *Zoning Board of Review*, 95 R. I. 485, 187 A. 2d 924; *Klowan* v. *Zoning Board of Review*, *supra*.

As we have already observed, the only contention briefed by the board related to jurisdiction. In oral argument before us, however, and after indication from the bench that the jurisdictional issue might be determined adversely to the board's position, its counsel contended that the decision should nonetheless remain undisturbed because of the presence of record evidence indicating that a gasoline filling station if located at the church site would devalue surrounding property and create a traffic hazard. His contention was that only in these areas would the record contain evidence which would support the board's findings. Accordingly, we limit our consideration to his contention.

It is settled that this court will not disturb the board's decision if there is any legally competent evidence upon which it may reasonably rest. *Dawson* v. *Zoning Board of Review*, *supra*; *Laudati* v. *Zoning Board of Review*, 91 R. I. 116. The requirement cannot be satisfied by any evidence but only by that which has probative force, and ordinarily when we examine the record we do so not to weigh the evidence but to ascertain its competency and legality. *Kelly* v. *Zoning Board of Review*, 94 R. I. 298, 302, 180 A.2d 319, 321; *Zimarino* v. *Zoning Board of Review*, 95 R. I. 383, 386, 187 A.2d 259, 261; *Center Realty Corp.* v. *Zoning Board of Review*, 96 R. I. 482, 484, 194 A.2d 671, 672.

Here, the only evidence supportive of the board's findings on the adverse economic consequent to the neighboring property and on the traffic conditions came from nonexpert witnesses and took the form of conclusional statements unsupported by factual data or background. Illustrative is the statement of one remonstrant that the proposed use would "depreciate the property in the neighborhood and it will create an additional hazard at the corner." Insofar as such testimony related to a depreciating effect of the pro-

posed use on real property, it obviously was a lay judgment on before-and-after values and as such could have probative force under our law only if voiced by an expert. *Buffum* v. *New York & Boston R.R.*, 4 R. I. 221; *Brown* v. *Providence & Springfield R.R.*, 12 R. I. 238; *Greene* v. *State Board of Public Roads*, 50 R. I. 489.

The relied upon testimony as to traffic conditions may stand in a different category since it may be assumed as being within the common knowledge that the operation of a gasoline filling station in any neighborhood will at least to some extent generate additional traffic. An increase in traffic, however, does not necessarily adversely affect the public convenience and welfare. That adverse result occurs only when as a consequence of the increase there follows an intensification of traffic congestion or a traffic hazard. *Center Realty Corp.* v. *Zoning Board of Review, supra*, p. 673. See also *Monforte* v. *Zoning Board of Review*, 93 R. I. 447, 452. It was congestion and hazard and not traffic increase which were within the contemplation of the legislature when it provided in §45-24-3 that zoning regulations should be "designed to lessen congestion in the streets * * *." A judgment as to whether the requisite traffic congestion or hazard within zoning contemplations would follow a grant of this application was a subject matter not within the testimonial competence of a witness lacking in expertise. See *Kelly* v. *Zoning Board of Review, supra*.

When the testimony offered by the remonstrants on these questions is disregarded as lacking in probative value, the record is devoid of any legally competent evidence upon which the board could reasonably have rested its findings that the proposed use would depreciate the value of neighboring property or create traffic congestion or hazards. The board's statement that it viewed the premises is of no assistance since it does not disclose in its decision what it saw or observed. *Kelly* v. *Zoning Board of Review, supra*. In our opinion, a conclusion contrary to the judgment

reached by the board is apparent from the record. It contains only uncontradicted and unimpeached testimony in favor of the application and establishes petitioners' entitlement to the privilege of using their land for a gasoline filling station subject to the fixing of such appropriate conditions and safeguards as will allow it to be harmonious with the general intent and purposes of the zoning ordinance.

The petition for certiorari is granted, the board's decision is quashed, the records certified to this court are ordered returned to the board with our decision endorsed thereon and for the fixing of such appropriate safeguards and conditions as may be reasonably necessary, if any, as well as for such further action in accordance with this opinion as may be appropriate.

*Matthew C. Cunningham, Daniel J. Garvey, Thomas Hetherington,* for petitioners.

*John A. O'Neill,* City Solicitor, *Gerald J. Pouliot,* Assistant City Solicitor, for respondent.